**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TRUDY J. SALLEY,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>TRUCKEE MEADOWS WATER AUTHORITY, *et al.*,<br><br>　　　　　Defendants. | 3:12-cv-00306-RCJ-WGC<br><br>**ORDER** |

Pending before the Court is Defendants' Motion for Attorneys' Fees (ECF No. 64) pursuant to 42 U.S.C. Section 1988 and 42 U.S.C. Section 2000e-5(k). Plaintiff has filed a Response (ECF No. 67) and Defendants submitted a Reply (ECF No. 68). For the reasons contained herein, the Motion is GRANTED in part and DENIED in part.

**I.　FACTS AND PROCEDURAL HISTORY**

On January 30, 2012, Plaintiff, a white American-born female, filed her original complaint in state court alleging various constitutional and state tort claims against Defendant Truckee Meadows Water Authority[1] ("TMWA"), her ex-employer, and Defendant Narala, her TMWA supervisor. (Pet. for Removal, ECF No. 1). Plaintiff alleged that she was treated hostilely by Narala because she was subjected to "excessive scrutiny, frequent erroneous accusation, yelling, rudeness, ostracism, demotion, transfer, alteration of job duties, negative

---

[1] Truckee Meadows Water Authority is a government entity. (Compl. ¶ 3, ECF No. 1-1).

1

performance evaluations, unwarranted discipline," and other work-related frustrations. (Compl. ¶ 11, ECF No. 1-1).

Defendants removed the case to federal court, and on September 12, 2012, moved to dismiss the complaint, contending that each of Plaintiff's five causes of action failed as a matter of law. (Sept. 12, 2012 Mot. to Dismiss, ECF No. 16). Plaintiff did not file a response to the motion. (Apr. 26, 2013 Order 2, ECF No. 35). Instead, on November 29, 2012, Plaintiff filed her first amended complaint ("FAC"), without approval from the Court. (*Id.*). The untimely FAC simply restated the allegedly deficient allegations, though it purported to add a sixth claim under Title VII for discrimination and retaliation. (*Id.*). As such, the FAC was insufficient to constitute a substantive amendment that would moot the first motion to dismiss. (*Id.*). Shortly thereafter, Defendants filed a second motion to dismiss along with a motion to strike the untimely FAC.

While that motion was pending, the parties engaged in an Early Neutral Evaluation Conference before Magistrate Judge Valerie P. Cooke on April 19, 2013. The parties conferred, but they were unable to negotiate a settlement. (ECF No. 34). On April 26, 2013, the Court issued an Order granting Defendants' first motion to dismiss as to Plaintiff's original five claims. (Apr. 26, 2013 Order 4, ECF No. 35). As to the Title VII claim, in an effort to give Plaintiff the benefit of the doubt, the Court granted her a retroactive extension and applied Defendants' second motion to dismiss against that claim. (*Id.*). Nevertheless, the Court dismissed the sixth claim, finding that Plaintiff failed to properly allege exhaustion of administrative remedies. Yet in an effort to give Plaintiff a final opportunity to prosecute her case, the Court granted leave to amend to add the necessary allegations related to exhaustion. The Court clearly and unambiguously ordered that if Plaintiff desired to file another amended complaint, she had to do

so within fourteen days of the Order's entry. (*Id.*). Plaintiff made no filing, and the deadline expired on May 10, 2013. (*Id.*).

Defendants waited an additional three weeks for Plaintiff to amend her complaint before filing a third motion to dismiss on May 29, 2013, requesting that Plaintiff's FAC be dismissed with prejudice for failure to comply with the Court's Order. (May 29, 2013 Mot. to Dismiss, ECF No. 26). A week later, Plaintiff made two untimely filings: a request for enlargement of time and the second amended complaint ("SAC"). (*See* ECF Nos. 37, 38). Plaintiff's counsel attempted to justify the delay by stating that he "failed to calendar [the May 10th] date" and that he could not "recreate an explanation for why it was not calendared," but requested that the Court forgive it as a "professional courtesy." (Oct. 30, 2013 Order 3, ECF No. 48). Defendants then moved to strike the proposed SAC. (ECF No. 41). On October 30, 2013, the Court granted Defendants' motion to strike and denied as moot the motion to dismiss, explaining that Plaintiff's missing the deadline was not based on excusable neglect and, additionally, Plaintiff had ignored an explicit order regarding the amendment date. (Oct. 30, 2013 Order 3–5). In that Order, the Court recognized that Defendants had been "needlessly forced to expend resources by repeatedly filing motions on matters that Plaintiff should have resolved long ago." (*Id.* at 6).

On November 13, 2013, Defendants filed a motion for attorneys' fees. After the matter was fully briefed by both sides, Plaintiff's counsel, Jeffrey Dickerson, was suspended from practice by the Nevada Supreme Court. Finding that it would be "seemingly necessary" to hold a hearing on the issue of attorneys' fees, the Court denied Defendants' motion without prejudice and granted Plaintiff sixty days to either associate substitute counsel or inform the Court that she would be proceeding pro se. That Order was entered on July 23, 2014. Plaintiff failed to do either within the sixty days given her. Rather, Defendants renewed their motion for attorneys'

3

1  fees on January 6, 2015 after which Plaintiff contacted substitute counsel on January 23, 2015.

2  (ECF No. 65). Plaintiff's substitute counsel then filed an unopposed motion for an extension of

3  time to respond to Defendants' renewed motion. The response to the present motion was filed

4  on February 6, 2015 and Defendants' replied on February 12, 2015.

5  **II.    ANALYSIS**

6        The present motion seeks $39,618.75 in attorneys' fees. Defendants argue that they are

7  entitled to attorneys' fees pursuant to 42 U.S.C. Section 1988 and 42 U.S.C. Section 2000e-5(k)

8  because (1) Plaintiff's complaint was meritless from the outset; and (2) Plaintiff continued to

9  litigate this case even after it was clear that her claims were baseless, engaging in long,

10 unnecessarily protracted litigation. (Renewed Mot. Att'ys' Fees 9–11, ECF No. 64). Plaintiff

11 responds that the Court's finding of implausibility does not mean the claims were meritless and

12 that Defendants' requested fees are unreasonable. (Pl.'s Resp. 2–3, ECF No. 67).

13       This case presents an interesting question regarding fees. As previously indicated in at

14 least one Order, Defendants have been forced to needlessly expend resources in defending

15 against Plaintiff's claims because of irresponsible and reckless pleading practices. (Oct. 30, 2013

16 Order 6). Therefore, the Court finds that some award of fees is appropriate here. *See B.K.B. v.*

17 *Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002). The question, though, is whether the

18 fees may be awarded under the statutes cited by Defendants, which would obligate Plaintiff

19 herself to pay the incurred expenses, or whether the fees should be assessed as sanctions against

20 Plaintiff's prior counsel, Attorney Dickerson.

21       **A. Fees under Section 1988 and Section 2000e-5**

22       Under 42 U.S.C. Section 1988, "the court, in its discretion, may allow the prevailing

23 party . . . a reasonable attorney's fee as part of the costs." Likewise, in a Title VII action, "the

24

court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ." 42 U.S.C. § 2000e-5(k). While successful plaintiffs in civil rights actions are awarded attorneys' fees as a matter of course, prevailing defendants are awarded fees only in "exceptional cases," lest plaintiffs with legitimate claims be deterred from filing suit. *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 968 (9th Cir. 2011). Accordingly, a prevailing defendant in a civil rights case is awarded attorneys' fees only if the court finds that the plaintiff's action was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

"A case may be deemed frivolous only when the result is obvious or the arguments of error are wholly without merit." *Gibson v. Office of Att'y Gen., State of California*, 561 F.3d 920, 929 (9th Cir. 2009). Whether an action is frivolous, unreasonable, or groundless must be determined on a claim by claim basis. *See Christiansburg Garment Co.*, 434 U.S. at 422. Only the fees incurred in defending against frivolous claims are recoverable. *Harris*, 631 F.3d at 971.

Plaintiff's first claim for relief alleged that Defendant Narala violated the Equal Protection Clause of the Fourteenth Amendment by discriminating and retaliating against Plaintiff "based upon her color, national origin, and gender." (Compl. ¶ 32). The second claim for relief alleged that Plaintiff engaged in speech on a matter of public concern and that because of her speech she suffered adverse employment actions in violation of the First Amendment. (Compl. ¶¶ 34–36). The third claim for relief alleged that Defendant Narala "intentionally inflicted emotional distress upon Plaintiff with objective manifestations and medical diagnoses." (Compl. ¶ 39). The fourth claim for relief alleged that Defendant TMWA was compliant in Plaintiff's constructive discharge. (Compl. ¶ 42). And the fifth claim for relief alleged that TMWA failed to properly train and supervise Narala in his duties as Plaintiff's supervisor.

5

1  (Compl. ¶ 46). The tardy sixth claim alleged that TMWA violated Title VII by discriminating
2  and retaliating against her. (FAC ¶ 50, ECF No. 19).[2]

3  In their first motion to dismiss, Defendants pointed out perceived weaknesses in each one of Plaintiff's original claims and why each should fail as a matter of law. However, the Court never actually had the opportunity to address Plaintiff's claims or their deficiencies because Plaintiff completely failed to respond to Defendants' motion. Instead, Plaintiff's counsel chose to file an amended complaint without Defendants' consent or the Court's leave two months after the deadline passed to respond to the motion to dismiss. And despite the benefit of knowing Defendants' contentions to the sufficiency of the original five claims, Plaintiff's unauthorized amended complaint merely recited the original five causes of action, nearly verbatim. (*See* Compl. ¶¶ 31–47; FAC ¶¶ 31–47). Finding Plaintiff's failure to respond as consent to the granting of the motion, *see* LR 7-2(d), the Court dismissed the five claims contained in the original complaint.

This dismissal, however, was procedural and the Court made no findings or representations as to the merits of Plaintiff's claims. Accordingly, the Court cannot now say that those claims were frivolous, unreasonable, or groundless based only on the bare allegations contained in the complaint and the FAC. *See Anthony v. Marion Cnty. Gen. Hosp.*, 617 F.2d 1164, 1170 (5th Cir. 1980).

Likewise, the Court finds that there is simply insufficient evidence to determine whether Plaintiff's sixth cause of action was frivolous, even though it was included in an unauthorized pleading. As with the original five claims, the Court never actually reached the merits of Plaintiff's Title VII claim due to procedural reasons. As initially pleaded, Plaintiff's claim for

---

[2] The Court notes that the third and fifth causes of action do not raise civil rights claims and would therefore not justify a fee award under Section 1988 or Section 2000e-5 regardless of the Court's determination on frivolity.

6

discrimination and retaliation under Title VII failed to indicate that she had submitted a complaint to either the Equal Employment Opportunity Commission or the Nevada Equal Rights Commission, or that she had received a "right to sue" letter and then brought her action within ninety days. The Court, wanting to give Plaintiff every chance possible, granted leave to amend the unauthorized complaint within fourteen days to properly allege administrative exhaustion.

Not only did Plaintiff's counsel miss the fourteen day deadline, but Plaintiff submitted no amended complaint until Defendants again moved to dismiss the case, over a month after the Court entered its previous order. Because Plaintiff's counsel offered no legitimate reason for missing the deadline explicitly contained in the Court's Order, no extension was granted and the SAC was not allowed. But even if the Court had accepted the SAC, there were absolutely no substantive changes to the pleading relevant to the issue of administrative exhaustion. (*See* SAC ¶¶ 29–31, ECF No. 38). Again due to procedural issues, the Court did not have the opportunity to evaluate the merits of Plaintiff's Title VII claim. Thus, the Court cannot say whether the claim was frivolous, unreasonable, or groundless.[3]

The recurring procedural errors in this case prevented the Court from analyzing the plausibility or merits of Plaintiff's claims. Therefore, the Court determines that an award of fees under Section 1988 or Section 2000e-5 is not warranted here. *Harris*, 631 F.3d at 971.

**B. Sanctions under Section 1927 and the Court's Inherent Authority**

Although the Court finds that attorneys' fees are not appropriate under the civil rights statutes, an award of fees is justified under either 28 U.S.C. Section 1927 or the Court's inherent authority to impose sanctions. A court may impose sanctions *sua sponte* as long as the

---

[3] Although no substantive changes were made to the pleading, a "right to sue" letter was attached to the SAC, (*see* SAC at 6), indicating that the claim may have survived Defendants' motion to dismiss had the SAC been timely filed. The Court finds that this is evidence that the Title VII claim may not have been completely frivolous.

sanctioned party is given an opportunity to be heard on the matter either orally or in writing. *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1120 (9th Cir. 2000).

Section 1927 authorizes the court to require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" to personally satisfy the reasonable attorneys' fees "incurred because of such conduct." Moreover, the district court has the inherent authority to impose sanctions for a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). In either case, such sanctions require the court to make a finding of bad faith. *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1526 (9th Cir. 1990).

"Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995). Reckless conduct that vexatiously increases the scope of litigation is evidence that Section 1927 has been violated. *Id.* ("That reckless conduct vexatiously increased the scope of this litigation in violation of § 1927."). For instance, the filing of multiple amended complaints supports a finding of bad faith where each complaint is not materially different from the last. *See Wages v. IRS*, 915 F.2d 1230, 1235 (9th Cir. 1990).

Further, the timing involved in making the filings is also a factor the court may consider when assessing bad faith. *See Salstrom v. Citicorp Servs., Inc.*, 74 F.3d 183, 185 (9th Cir. 1996) (affirming sanctions based on number and length of the pleadings, the timing of the pleadings, and the substance of the claims asserted). Moreover, where an attorney persists in pressing the same deficient allegations in multiple complaints, he unreasonably and vexatiously multiplies the proceedings within the meaning of Section 1927. *Stewart v. City of Chicago*, 622 F. Supp. 35, 37 (N.D. Ill. 1985). Willful disobedience of a court's order is also evidence of bad faith. *Aloe Vera*

*of Am., Inc. v. United States*, 376 F.3d 960, 965 (9th Cir. 2004); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1482 (9th Cir. 1989).

In this case, the Court finds that the actions of Plaintiff's previous counsel, Attorney Dickerson, reflect bad faith. The complete disregard for the rules of civil procedure as well as the Court's Orders compels the Court's conclusion that sanctions are warranted in this case. Regardless of whether Plaintiff's claims were meritorious, Attorney Dickerson's conduct demonstrates intent to harass Defendants rather than effectively prosecute his client's case. Indeed, Dickerson's delays in this case can only be interpreted by the Court as an attempt to draw out the litigation and increase the expenses incurred by Defendants.

To begin, besides filing the initial complaint in state court to commence these proceedings, Plaintiff's counsel never took the initiative to file an amended pleading until Defendants first filed a motion to dismiss. For example, Defendants' first motion to dismiss was submitted on September 12, 2012. Plaintiff received an extension of time to respond to the motion, but remained silent for the next two months, until the unauthorized FAC was filed on November 29, 2012. Rather than respond to anything in Defendants' first motion to dismiss, the FAC repeated word for word the language in the original complaint, while adding a sixth claim.

The Court acknowledges that a single missed deadline and an unauthorized filing alone may not support a finding of bad faith, even when the unpermitted filing requires the opposing to expend additional resources to respond. *C.f. United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986) (holding that repeatedly being late to court did not necessarily evidence bad faith). However, Attorney Dickerson's delaying tactics had just started.

Once the ENE Conference concluded without settlement, the Court addressed Defendants' first and second motions to dismiss as well as Plaintiff's FAC. Recognizing

9

1  Plaintiff's complete failure to respond to the first motion to dismiss, either by opposition or by

2  rectifying certain deficiencies in the complaint, the Court granted Defendants' motion as to the

3  original five claims.  Believing that this would send a message to Plaintiff's counsel and hoping

4  not to punish Plaintiff for her counsel's mistakes, the Court granted Plaintiff leave to amend the

5  Title VII claim.  The Court spelled out that the deficiency in the FAC was Plaintiff's failure to

6  allege "that she filed a complaint with the EEOC or NERC, or that she [had] received a right to

7  sue letter and sued within ninety days." (Apr. 26, 2013 Order 4).  And in yet another effort to

8  send Dickerson a direct message, the Court explicitly stated that if the Title VII claim was going

9  to be amended, it had to be done "within fourteen (14) days" of the Court's Order. (*Id.*).

10  True to form, however, Dickerson let the deadline pass.  Once Defendants filed their third

11  motion to dismiss in this case over a month later, Dickerson sought an enlargement of time and

12  contemporaneously filed the SAC and an opposition to Defendants' motion.  This was in

13  violation of the Court's explicit order that any amendment be filed within fourteen days.  Totally

14  unapologetic for the additional delay in proceedings and the extra expense incurred by

15  Defendants, Dickerson merely stated that he "failed to calendar" the deadline and that he "[could

16  not] recreate an explanation for why it was not calendared." (Pl.'s Opp'n Mot. to Dismiss 1, ECF

17  No. 37).  He then fully expected the Court to consider the SAC and rule on the sufficiency of the

18  Title VII claim, despite having made no material changes to the pleading.[4] (*Id.*).  This required

19  Defendants to draft another motion to strike the SAC as untimely, (ECF No. 41), which the

20  Court granted thereby dismissing Plaintiff's case, (Oct. 10, 2013 Order 6).

21  The Court believes that Attorney Dickerson would have allowed this circle of filings to

22  continue indefinitely had the Court not dismissed Plaintiff's claims with prejudice.  The Court

---

[4] The deficient language of the pleading remained identical.  Dickerson merely attached the EEOC "right to sue" letter to the SAC, which the EEOC had mailed to Plaintiff on November 23 2012, prior to Dickerson's submission of the FAC.

allowed Dickerson every opportunity to prosecute Plaintiff's case, but each time he ignored deadlines, made unauthorized filings to which Defendants and the Court had to respond, and he never materially altered the allegations contained in the original complaint or the FAC. *See Pac. Harbor Capital, Inc.*, 210 F.3d at 1118 (upholding sanctions where attorney "delayed compliance with the court's order and wasted judicial resources). Dickerson violated the Court's Order by making a filing well after the deadline explicitly set by the Court, which caused Defendants additional expense and ultimately culminated in the dismissal of his client's case. This conduct was both knowing and reckless. *Id.* (stating that "knowing or reckless conduct" meets the bad faith standard). Accordingly, the Court finds that Dickerson acted in bad faith by unreasonably and vexatiously multiplying the proceedings in this case. *W. Coast Theater Corp.*, 897 F.2d at 1528 (upholding sanctions where attorney engaged in reckless conduct).

    **C.  Award of Attorneys' Fees**

Since the Court finds that Attorney Dickerson violated Section 1927, the next question is what amount of attorneys' fees should be awarded to Defendants. While the conduct of Plaintiff's counsel unnecessarily multiplied proceedings in this case, Defendants are entitled to recover only those fees that are attributable to Dickerson's reckless conduct. *Matter of Yagman*, 796 F.2d 1165, 1184–85 (9th Cir. 1986).

The Court finds that the fees associated with the December 12, 2012 motion to dismiss and motion to strike are recoverable. The Court also finds that fees associated with the May 29, 2013 motion to dismiss are recoverable. And the Court finds that the fees associated with the June 6, 2013 motion to strike are recoverable. The Court believes that the fees arising from and relating to these motions are a direct result of Dickerson's recklessness. *See id.* at 1184.

The Court concludes that the amount recoverable arising from these motions is $7,268.50. This covers the work done by Defendants' attorneys relating to these motions. (*See* Fee Report, ECF No. 64-2, at 36, 41, 48, 62, 65, 68).[5] The Court's calculation is based on the loadstar formula, and it does not include time spent on other matters related to this litigation performed contemporaneously with the work conducted to fully brief the above referenced motions. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Furthermore, based on a review of the Fee Report submitted by Defendants' counsel, the Court determines that the time spent and the rates charged are reasonable. *Id.*

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion for Attorneys' Fees (ECF No. 64) is GRANTED in part and DENIED in part.

The Court DENIES Defendants' request for fees under 42 U.S.C. Section 1988 and 42 U.S.C. Section 2000e-5. The Court GRANTS the Motion in the amount of $7,268.50 based on the Court's *sua sponte* finding that Plaintiff's counsel acted with bad faith that unreasonably and vexatiously multiplied the proceedings in this case. The award is assessed against Plaintiff's prior counsel, Jeffrey A. Dickerson, as a sanction for his conduct in this case.

IT IS SO ORDERED.

Dated: March 27, 2015

_____
ROBERT C. JONES
United States District Judge

---

[5] The Court awarded fees in the following amounts: 11/29/12, $79.50; 12/10/12, $609.50; 12/13/12, $105, $212; 2/21/13, $1,125; 2/22/13, $220; 2/25/13, $245, $55, $250; 5/29/13, $412.50, $500; 6/17/13, $962.50; 6/18/13, $105, $825; 6/19/13, $632.50; 7/8/13, $105, $825). The Court discounted the following time entries as excessive for work on motions and replies that covered issues similar to those Defendants addressed in previous filings: 4.5 hours on 2/21/13; 3.5 hours on 6/17/13.